Rosie Marie LOWERY, Plaintiff–
Appellant,

v.

COMMISSIONER, SOCIAL SECU-
RITY, ADMINISTRATION
Defendant–Appellee.

No. 01–5970.

United States Court of Appeals,
Sixth Circuit.

Jan. 30, 2003.

Before BOGGS, SUHRHEINRICH and CLAY, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Plaintiff–Appellant Rosie Marie Lowery, the mother and next friend of Jennifer Ashley Nicole Dishman, an eleven-year old girl, appeals from the decision entered on June 21, 2001, in the United States District Court for the Eastern District of Tennessee, affirming the decision of an Administrative Law Judge ("ALJ") redetermining Jennifer's eligibility and terminating her Supplemental Security Income Children's Disability benefits ("SSI benefits")

Lowery asserts that the district court erred in finding that substantial evidence in the record supported the ALJ's decision to terminate benefits based on the opinion that Jennifer's mother had not shown that her daughter's impairment was medically or functionally equal to an impairment listed in 20 C.F.R. § 404, subpt. P. app. 1.

We reverse and find that the ALJ did not have substantial evidence to find that Jennifer's impairment did not functionally equal a listed impairment. The evidence shows that Jennifer has a marked limitation in her social functioning, and there is not substantial evidence to suggest otherwise. We hereby remand this cause to the ALJ for award proceedings not inconsistent with this opinion.

## I. Facts

Jennifer Dishman was born on December 24, 1990. She has had difficulty speaking throughout her life. Specifically, she has been diagnosed with a speech delay. Her problem has severely diminished her intelligibility and has caused her to be an outcast among her peers, shunned by other children. She is unable to interact well, and almost completely unable to express her basic wants and needs, or even to say her name. She cannot read, and routinely exhibits fits of rage when she becomes frustrated that she is not understood. Because of her condition, Jennifer was granted SSI benefits in October 1994, under the Social Security Act that was in place at the time.[1]

In 1996, the Personal Responsibility and Work Opportunity Reconciliation Act, Pub.L. No. 104–193, 110 Stat. 2105 ("Welfare Act"), amended the definitions in 42 U.S.C. § 1382c and changed the criteria for determining SSI benefits. In addition to affecting the award of benefits to future recipients, the Welfare Act required the Social Security Commission to redetermine benefits for all children who were receiving SSI benefits at the time of enactment (August 22, 1996). *See* Pub L. No. 104–193, § 211(d)(2)(A), 110 Stat. 2105, 2190.

Pursuant to the Welfare Act, the Social Security Commission mandated a hearing to redetermine Jennifer's eligibility. On May 28, 1997, the Commission determined that Jennifer was no longer eligible for

---

1. Jennifer received benefits under 42 U.S.C. § 1381a, utilizing the definitions in 42 U.S.C. § 1382c(a)(3)(A), which was later amended.

SSI benefits because her condition did not meet the amended requirements for benefits, in that her speech impairment did not "medically or functionally equal" an impairment listed in the regulations to the Welfare Act.

Jennifer's mother appealed, on behalf of her daughter, to the ALJ's office. The ALJ made an independent determination and, on July 31, 1998, likewise concluded that Jennifer was ineligible for benefits under the Welfare Act because her condition was not medically or functionally equal to an impairment listed in the regulations to the Act, namely 20 C.F.R. § 404, subpt. P, app. 1, § 2.09, which references organic speech impediments. Specifically, the ALJ found that Jennifer's condition was not medically equal because a report by a speech pathologist, Susan Commons, concluded that her limitation of speech was only "moderate to severe;" and the ALJ found her condition was not functionally equal because of a report of Jennifer's former teacher, as well as an isolated portion of Lowery's testimony, indicating that Jennifer was able to function socially since she allegedly had the ability to interact age-appropriately with adults, make friends, and play with other children on some level.

Lowery attempted to appeal the ALJ's decision to the Social Security Appeals Council, but, on April 22, 2000, the Council issued an order refusing to hear the case. Having exhausted her administrative remedies. Lowery appealed to the district court below.

The magistrate judge issued a report and recommendation on June 7, 2001, expressing the opinion that there was substantial evidence to support the ALJ's conclusion based on the reports of Commons and another reviewing physician, Jeffrey Bryant. Accordingly, the magistrate found no basis for reversal. The district court adopted the magistrate's findings and issued a final order to that effect on June 20, 2001.

Jennifer's mother filed a notice of appeal on July 30, 2001, and this matter is timely before this Court, pursuant to Fed. R.App. P. 3.

## II. Standard of Review

Our review of an ALJ's decision is limited to an examination of whether the ALJ had substantial evidence for his ruling. *See Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir.1990). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994) (per curiam). Moreover, reversal is not warranted because substantial evidence also supports an opposite conclusion, but only if substantial evidence does not support the ALJ's conclusion. *Crum,* 921 F.2d at 644. Accordingly, contrary evidence shall have no bearing on our decision except to the extent it demonstrates that the ALJ's conclusion is not supported by substantial evidence. *See Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir.1978) (intimating that question of whether evidence is substantial is determined by its place among all the evidence).

## III. Substantial Evidence

Under the regulations to the Welfare Act, a claim for SSI benefits undergoes a three-step process. 20 C.F.R. § 416.924. The first two steps – an examination of whether Jennifer is unable to participate in substantial gainful activity, and whether she has a severe impairment or combination of impairments – are not at issue here.

In the third step, Lowery is required to show that Jennifer's impairments meet,

medically equal, or functionally equal any impairment listed in the regulations to the Act. 20 C.F.R § 416.924. The relevant list of impairments is provided in 20 C.F.R. § 404, subpt. P, app. 1. Section 2.09 of that subpart lists the speech impairment that Jennifer's mother is seeking to equate to her daughter's impairment:

> *Organic loss of speech* due to any cause with inability to produce by any means speech which can be heard, understood, and sustained.

20 C.F.R. § 404, subpt. P, app. 1, § 2.09.[2]

An impairment, or combination of impairments, is medically equal to a listed condition if the claimant has physical limitations, supported by medical findings, which are at least equal in severity and duration to limitations associated with the listed impairment. 20 C.F.R. § 416.926. An impairment is functionally equal to a listed impairment if the claimant's condition creates a limitation in her everyday functioning, such as her ability to perform routine tasks or interact socially, in a way similar to the way that a listed impairment would affect her. *See* 20 C.F.R. § 416.926a(a).

## A. Medical Equality

■ The Social Security Commission has promulgated SSR 98–1p to specify when an impairment will be medically equal to the speech impairment listed in § 2.09. Under that ruling, medical equality will be found if the claimant has a "marked" limitation in both speech and cognitive function, or if she has an "extreme" limitation in either. The Commissioner concedes that Jennifer has a

"marked" limitation in speech but challenges whether she has an "extreme" limitation in speech or even a "marked" limitation in cognitive function.

An agency's ruling on its own regulations is given a great deal of deference. *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552, 559 (6th Cir.1995) (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)) (giving an agency's interpretation "controlling weight unless it is plainly erroneous or inconsistent with the regulation"); *see also Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150–51, 111 S:Ct. 1171, 113 L.Ed.2d 117 (1991); *Lyng v. Payne*, 476 U.S. 926, 939, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986) (stating that "[a]n agency's construction of its own regulations is entitled to substantial deference"); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965) (stating that deference should be given to an agency's decision if it is reasonable). SSR 98–1p provides definitions for "marked" and "extreme" limitations in speech, and, given the deference due this ruling, Jennifer's mother insists that the ALJ and the district court erred in not applying these definitions to her daughter.

For a child over five, SSR 98–1p defines a "marked" limitation in speech as:

1) Sounds, omissions, distortions, or phonological patters, or fluency (rate, rhythm of speech) not typical for this group; or significant aberrations in vocal pitch, quality, or intensity; and

---

**2.** Incidentally, the Act does not require that Jennifer's impairment equal a specific listed impairment, but if her impairment subjects her to the same limitations that any listed impairment involves, her impairment will be deemed equal, even though it may pertain to a different body system. For instance, if Jen-

nifer had a leg ailment that prevented her from walking, this might be equal to a listed back ailment that referenced the inability to walk. However, Jennifer's only limitation is that she cannot speak. Section 2.09 of the regulation is the only listed impairment that involves the inability to speak.

2) Conversation is intelligible 1/2 to 2/3 of the time.

3) Intelligibility improves with repetition.

SSR 98–1p further offers that a child has an "extreme" limitation in speech if the child can show:

1) Sounds, omissions, distortions, or phonological patters, or fluency (rate, rhythm of speech) not typical for this group, or significant aberrations in vocal pitch, quality, or intensity; and

2) Conversation is intelligible no more than half of the time despite repetitions.

SSR 98–1p (Table 1) (1998). Moreover, the evidence of such limitation must come in the form of medical evidence alone. *See* 20 C.F.R. § 416.926(b); *see also Dorton v. Heckler*, 789 F.2d 363, 366 (6th Cir.1986) (per curiam).

In his opinion, the ALJ failed to analyze whether Jennifer's speech was intelligible, as required by SSR 98–1p. Instead, the ALJ relied solely on the report of Susan Commons, a speech pathologist. Commons saw Jennifer when she was six years, four months old; and performed several tests. Commons found that Jennifer exhibited a vocabulary recognition age of four years, six months; and fell within the moderately low range.[3] In April 1997, Commons reexamined Jennifer and found that she exhibited "moderate to severe developmental articulation and language delays." The ALJ relied on this finding to conclude that Jennifer had a marked, but not an extreme speech limitation.

Based on this evidence, the ALJ, without discussion, and without utilizing the intelligibility test set forth in SSR 98–1p, concluded that Jennifer's impairment did not medically equal any listed impairment, because her speech limitation was only marked, not extreme.

On appeal, the Commissioner concedes that the ALJ failed to analyze Lowery's claim under SSR 98–1p. but nonetheless asserts that substantial evidence is present because of Commons's finding that Jennifer's problem was only "moderate to severe." Moreover, the Commissioner contends that even had the ALJ used the definitions in SSR 98–1p, Lowery would fail anyway because she has not provided medical evidence to show that her daughter is unintelligible more than half the time in spite of repetitions.

In order to determine whether substantial evidence exists, we look at all supporting evidence, not just that mentioned in the ALJ's report. Dr. Jeffrey Bryant also reviewed Jennifer's records and concluded that Jennifer did not suffer from an extreme limitation in her speech. Moreover, unlike Commons's report, Bryant tracked the language of the regulation, expressing specifically that Jennifer's speech limitation was not extreme.[4] Furthermore, although the ALJ did not analyze this cause under SSR 98–1p. the burden of proof rests with Jennifer's mother, so the test used by the ALJ is irrelevant here in light of the fact that Lowery had not presented

---

**3.** Commons performed several tests on Jennifer. She utilized the Peabody Picture Vocabulary Test. Form L. which revealed a vocabulary recognition age of four years, six months, which equates to a 76 standard score equivalent. This score is in the moderately low range. Commons also utilized the Utah Test of Language Development. This test revealed that Jennifer's general language functioning was at three years, ten months. Commons

also gave Jennifer a phoneme test. On the Screening Subtest of the Templin Darley Articulation Test, Jennifer correctly produced only thirteen of fifty phonemes, whereas the mean for a female her age was 45.3, and 32.5 was the cut-off for adequacy.

**4.** Bryant's report reveals that he relied on Commons's report.

any medical evidence to support her position. We find that because Lowery did not offer any medical evidence to suggest that she would have met her burden under SSR 98–1p, if it were utilized, her claim must fail.

Accordingly, because the reports of Commons and Bryant indicate that Jennifer's speech limitation is not extreme, and given the absence of any medical evidence from Jennifer's mother,[5] we find that there is substantial evidence to support the ALJ's conclusion that Jennifer's impairment does not medically equal an impairment listed in 20 C.F.R. § 404, subpt. p, app. 1, § 2.09.

## B. Functional Equality

■ However, even though Jennifer's condition does not *medically* equal a listed impairment, she is nonetheless entitled to benefits under the Welfare Act if her condition *functionally* equals a listed impairment.

Functional equality is determined in light of four factors:

1) limitations in specific functions

2) limitations resulting from chronic/ frequent illnesses

3) limitations resulting from the effects of medication

4) broad functional limitations.

20 C.F.R. § 416.926a(b). If the claimant can show limitation under any of these four factors, her impairment functionally equals a listed impairment. Here, Lowery does not contend that Jennifer is chronically sick or has suffered from any side

effects of medication, but focuses only on the first and fourth factors.

As for the first factor, Jennifer's mother claims that her daughter is limited only in her ability to speak. However, an examination of limitation in speech in general is included in the fourth factor as well.[6] Because there is substantial overlap between the first and fourth factors in regard to children with speech problems, we will analyze Jennifer's claim only under the fourth.

In order to prove the fourth factor, Jennifer's mother must demonstrate that her daughter suffers from broad functional limitations. Under the regulations to the Welfare Act, this factor will be satisfied and Jennifer's impairment will be found functionally equal to a listed impairment if there is limitation among the following areas: cognition/ communication; motor skills; social functioning; personal functioning; and concentration, persistence, and pace. 20 C.F.R. § 416.926a(c)(5)(2002). To show functional equality via limitation in broad areas, the claimant must demonstrate "extreme" limitation in one area, or a "marked" limitation in two areas. 20 C.F.R. § 416.926a(b)(2002). As stated above, the Commissioner concedes that Jennifer suffers from a marked limitation in cognition/ communication. Since Jennifer's mother does not contend that Jennifer is limited in either her motor, personal, or concentration skills, we will address only her social functioning, and whether it is also at least marked.

The ALJ found that Jennifer did not suffer from any kind of social limitation.

5. Lowery does not present any medical evidence to support her claim that Jennifer suffers from a marked limitation in her cognitive functioning, so that argument fails here also.

6. Here, there is a great deal of overlap among the factors for functional equality. This is

because communication is a broad category by which the functional equality of all claims for benefits are judged, and it also happens to be Jennifer's specific problem here. Hence, independent examination of each of the factors is not necessary here.

He based his decision solely on the partial testimony of Jennifer's mother and a check-off form [7] filled out by Jennifer's pre-school/ kindergarten teacher. Carrie Kanipe, and found that Jennifer acts similarly to other children her age. However, we find the ALJ's reliance on each of these sources was misplaced.

### 1. Testimony of Jennifer's Mother

The ALJ characterized Lowery's testimony as supporting the proposition that Jennifer was able to function socially as any other child her age. Specifically, the ALJ relied on Lowery's statements that Jennifer had one girlfriend who would come over to her house to play, and that Jennifer has the ability to make friends with children, if those children are around her for a long time.

Although this information, viewed narrowly, tends to indicate that Jennifer has some degree of social functioning, it represents a mischaracterization of Lowery's testimony as a whole. The ALJ may not take part of a witness's testimony and disregard the rest. *Cf. United States v. Epley,* 52 F.3d 571, 579 (6th Cir.1995) (intimating that a trier of fact cannot consider isolated testimony out of context); *cf. United States v. Cresta,* 825 F.2d 538, 548 (1st Cir.1987) (indicating that a witness's testimony is viewed as a whole and isolated or contradictory statements are considered as compared to the entire testimony); *Olgin v. Darnell,* 664 F.2d 107, 108 (5th Cir.1981) (stating that part of a witness's testimony cannot be considered alone); *United States v. Reicin,* 497 F.2d 563, 567 (7th Cir.1974) (indicating that isolated testimony cannot be considered in a vacuum); *Angelina Casualty Co. v. Bluitt,* 235 F.2d 764, 767 (5th Cir.1956) (stating that "[t]es-timony as a whole and not isolated portions of it must be considered"); *Meyers v. United States,* 171 F.2d 800, 806 (D.C.Cir. 1948) (holding that a witness's statement cannot be isolated and considered apart from the testimony as a whole). To the contrary, substantial evidence is determined from the record as a whole. *See Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir.1984); *see also Hephner,* 574 F.2d at 362 (stating that "the Court may not base its decision on a single piece of evidence and disregard other pertinent evidence in evaluating whether substantial evidence exists."); *cf. Trudell v. Apfel,* 130 Supp.2d 891, 894 (E.D.Mich.2001) (proposing that the substantial evidence standard does not permit a selective reading of the record) Moreover, an "ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995) (citing *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994)).

Lowery testified that Jennifer's only friend no longer plays with her, and instead has abandoned her daughter for the company of Jennifer's older sister. Lowery testified that she believes this was because the little girl became increasingly frustrated by the fact that she can understand little, if any, of what Jennifer says. Lowery further testified that, notwithstanding this one little girl, Jennifer is ostracized by the majority of children, Jennifer has trouble in school because she cannot participate in group activities, and Jennifer can no longer go to the Boys and Girls Club because all the children make fun of her.

---

**7.** By "check-off form," we mean that Kanipe filled out a form with pre-printed questions followed by a space where the respondent could either check "yes" or "no." In the space following each question, there was room for the respondent to expound on her answer if she so chose. Kanipe provided very little explanation for any of her answers.

We find that Jennifer's mother's testimony, when read as a whole, supports the contention that Jennifer has a marked limitation in social functioning. We find that Lowery's testimony reveals that Jennifer is a lonely little girl who struggles to make friends. We do not believe that the test of "marked social functioning" requires that Jennifer completely lack companionship, or that she be a virtual recluse, locked-up with no contact with other children. Rather, the regulations define "marked" as something "more than moderate" and "less than extreme." 20 C.F.R. § 416.92a(c)(3)(i)(C). Under this definition, we believe the test requires only that Jennifer's mother demonstrate that her daughter's ability to function socially is sufficiently hindered and far below average. We find that Lowery's testimony does not evidence that Jennifer's social skills are anywhere near normal, and therefore her testimony in no way constitutes substantial evidence to support the ALJ's conclusion that Jennifer's social functioning is not marked.

## 2. Report of Carrie Kanipe

Having found that Jennifer's mother's testimony supports the very opposite conclusion that the ALJ purports it does, the only remaining evidence he relied on in support of his position is the report of Carrie Kanipe. However, the report that Kanipe filled out was merely a check-off form, where she could only answer either affirmatively or negatively to pre-printed questions.

The form was composed of several sections, each referencing one of the broad areas of limitation considered under the functional equality test. The section of the form pertaining to social functioning consisted of only two questions. In answering these two questions, Kanipe checked "yes" twice, indicating that she believed Jennifer related age-appropriately to adults, and is able to develop friendships and relate to peers age-appropriately.

However, the form Kanipe used gave her little room to provide adequate explanations; and in fact, she chose not to expound when answering the questions pertaining to social functioning. Hence, the ALJ had only conclusions from Kanipe, with no analysis and no mention of the factual bases from which she drew her answers. Moreover, her affirmative checkmark, in answer to the question asking whether Jennifer relates age-appropriately to adults, directly contradicts her earlier checkmark in the communication/cognition section of the same form, which indicated that she believed Jennifer was unable to carry on age-appropriate conversations with adults. We find this contradiction negates any value her report would have otherwise had as evidence.[8]

Furthermore, Jennifer was a seven-year old kindergartner when Kanipe taught her, and it is unclear whether Kanipe was answering the questions related to age-appropriateness based on Jennifer's grade or age.[9]

In sum, we find that two perfunctory checkmarks do not constitute substantial evidence. Kanipe's answers completely lacked analysis, were unsupported, and

8. In the communication/cognition section of the form, Kanipe was asked. "Can this student carry out age-appropriate conversation with adults and other students?" Kanipe checked "no," and supplemented her answer by writing, "Has disability in speech: She is doing much better speaking but has to be reminded to slow down [and] speak clearly."

9. This is demonstrated in one of Kanipe's answers in the cognitive function part of the form, where, in response to the question, "Is this student able to apply skills involved in reading, writing, math, reasoning, and problem solving at an age-appropriate level?," Kanipe answered, "Yes – Kindergarten appropriate."

were contradictory. Accordingly, we find that the ALJ lacked substantial evidence for his conclusion that Jennifer's social limitations were not at least marked.

## IV. Lowery's Evidence

■ However, even though the ALJ's position lacked substantial evidence, the burden of proof remains with Jennifer's mother to prove that her daughter suffers from a marked limitation in her social functioning.[10]

Jennifer's mother offers the report of Kathy Thomas, a psychologist at the Overlook Mental Health Center, who had met with Jennifer from October 7, 1997 to May 15, 1998, to counter Kanipe's form and the ALJ's position that her daughter's limitation in social functioning was not marked. Thomas comes to the opposite conclusion of the ALJ, and concludes that Jennifer is indeed marked in her cognitive/communicative functioning and her social functioning. Moreover. Thomas provided analysis for her conclusion that Jennifer's limitation in social functioning was at least marked. She notes that Jennifer "has [a] severe speech impediment, [and] possible hearing disabilities. She has extreme difficulty dealing [with] social situations, peers, [and] school due to low self esteem, [and an] inability to communicate." Thomas further notes that Jennifer "[i]solates herself from others – has no friends." Because Thomas's supported findings reinforce Jennifer's mother's testimony, we find that she had presented enough evidence to meet her burden of proof. Accordingly, we find that Jennifer is entitled to benefits under the Welfare Act.

## V. Conclusion

For the foregoing reasons, we RE-VERSE the decision of the district court, and find that the ALJ lacked substantial evidence to support his conclusion that Jennifer's impairment did not functionally equal one listed in the regulations. Moreover, we find that Lowery met her burden of proof in showing that her daughter's communication/cognition limitations and social limitations are each marked. Therefore, we hereby REMAND this cause to the ALJ for award proceedings not inconsistent with this decision.

---

10. Ultimately, the ALJ misanalyzed this case. He wrote his opinion as if the Commissioner were the party with the burden of proof. His analysis should not have involved whether the Commissioner had shown that Jennifer's social limitations *were not* marked, but whether Jennifer's mother showed that her daughter's social limitations *were* marked. Accordingly, even though we find that substantial evidence does not support the conclusion that Jennifer's limitation in social skills were not marked, this is irrelevant unless there exists contrary evidence to indicate that Jennifer's mother can meet her burden of proof.