# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3068NI

_____

Rasheeda K. Jones,              *

                               *

        Appellant,          *

                               *   On Appeal from the United

    v.                    *   States District Court

                               *   for the Northern District

                               *   of Iowa.

Jo Anne B. Barnhart, Commissioner   *

of Social Security,            *

                               *

        Appellee.           *

_____

Submitted: February 14, 2003

Filed: July 3, 2003

_____

Before HANSEN, Chief Judge,[1] RICHARD S. ARNOLD and BYE, Circuit
Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


Rasheeda Kambra Jones applied for and was denied Supplemental Security
Income benefits under Title XVI of the Social Security Act. The denial was based on

_____

[1]The Hon. David R. Hansen stepped down as Chief Judge of the United States
Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003.
He has been succeeded by the Hon. James B. Loken.

the ground that her impairments did not meet, equal, or functionally equal the childhood or adult listings for mental retardation. The Administrative Law Judge (ALJ) found that Ms. Jones was not disabled because, although she did suffer from mental retardation, she did not have the kind of additional impairment necessary to qualify her for the listing claimed. The Appeals Council, acting for the Commissioner, agreed. Ms. Jones appeals from a decision of the United States District Court for the Northern District of Iowa, which upheld this decision to deny her benefits. On appeal, she argues that the combination of her mental, learning, and communications limitations satisfies the criteria for a finding of disability. We hold that the Commissioner's decision was not supported by substantial evidence, reverse the judgment of the District Court, and remand with directions to award benefits.

I.

This Court reviews a decision by an ALJ "to determine whether it is supported by substantial evidence on the record as a whole." Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3) (1998). Substantial evidence is defined as evidence that a reasonable person would find adequate to support the conclusion. Bailey, at 1065.

Ms. Jones's application for SSI benefits was filed a little more than one month before her 18th birthday, and so was evaluated under the standards for both childhood disability (for the brief period before she reached her majority) and adult disability. The standards for evaluation of childhood and adult disability are similar but not identical. In order to determine whether a child is eligible for SSI benefits on the basis of disability, an ALJ must first determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b) (2000). If the child is not engaged in such activity, the ALJ must determine whether the child's impairment or combination of impairments is severe. 20 C.F.R. § 416.924(c) (2000). If the impairment is severe, the ALJ must then determine whether a child's impairments

-2-

meet, medically equal, or functionally equal, a listed impairment set out in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 416.924(d) (2000). In the event a child's impairments do not meet or medically equal a listed impairment, the ALJ must assess all functional limitations to decide whether they functionally amount to a listed impairment. 20 C.F.R. § 416.926(a) (2000). If the impairments do not meet, medically equal, or functionally equal a listed impairment, a child will not be found disabled. 20 C.F.R. § 416.926(d) (2000).

To find an adult disabled, an ALJ normally engages in a five-step analysis. 20 C.F.R. § 404.1520(a)-(f) (2002); Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first three steps of this analysis replicate the analysis for disability in a child described above. If a listed impairment is not met or equaled, the fourth step is reached, at which the ALJ determines whether the claimant is prevented from performing the work she has performed in the past. If she is able to perform this work, she is not considered disabled. If she is not able to perform work she has done before, the ALJ must determine whether she is capable of performing other work in the national economy given her age, education, and work experience. Trenary v. Bowen, 898 F.2d 1361, 1363 n.3 (8th Cir. 1990) (citing Bowen v. Yuckert, 482 U.S. at 140-142); 20 C.F.R. § 404.1520(a)-(f) (2002).

The present case is unusual, in that the fourth and fifth steps of the sequential are irrelevant and need not be reached. If the claimant wins at the third step (a listed impairment), she must be held disabled, and the case is over. E.g., Sird v. Chater, 105 F.3d 401, 402, 403 n.6 (8th Cir. 1997). In this particular case, the claimant concedes that she must win, if at all, at the third step. If she does not meet the criteria for a listed impairment, she gives up, so to speak, and does not ask that the analysis proceed to the fourth and fifth steps. We therefore need not be concerned with, and do not discuss, any of the evidence or findings that relate to these last two steps.

II.

Section 12.05(C) provides that mental retardation is sufficiently severe to constitute a listed disability for an adult when the claimant has: (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70," and (2) "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C) (2002).[2] A physical or other mental impairment is sufficient to satisfy the second part of this test when such impairment "has a 'more than slight or minimal' effect on [the claimant's] ability to perform work." Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000), quoting Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1997). It is undisputed that Ms. Jones's IQ score meets the criteria of Listing 12.05(C) (adult) and 112.05(D) (child). However, the ALJ found that she lacked the necessary "additional and significant" limitation required under these sections for a finding that her impairment meets or equals a listed impairment. On appeal, Ms. Jones claims, among other things, that her limitations in speech amount to the required "additional and significant" limitation which, coupled with her low intelligence, should entitle her to SSI benefits. Notably, the Commissioner did not discuss Ms. Jones's claimed speech and communications impairment as distinct from her low IQ, and made no determination that it had no more than a "slight or minimal" effect on her ability to work.

In considering whether substantial evidence exists to uphold the Commissioner's finding, we must first address whether this claimant's speech impairment is more than "slight or minimal." In our view, the record before us not only permits, but requires, an affirmative answer to that question. The ALJ found that Ms. Jones was incapable of performing work that required public speaking or reading aloud. According to the trier of fact, Ms. Jones is unsuited to work "in any job where

---

[2]The phrase "work-related" does not occur in the parallel definition for children, § 112.05(D). Otherwise, the two definitions are not materially different.

she would be forced to speak in public to groups of people." Joint Appendix 16. Ms. Jones responded to her attorney's questions about her anxiety in public situations by stating that she gets nervous "[w]hen I have to be in front of people or have to say a speech or something." Admin R. at 62. Our dissenting colleague points out that there was no specific reference to a speech defect as such in the record before the ALJ. The ALJ's opinion, however, Id. at 18, does refer to a 1998 diagnosis by a state agency clinical psychologist, Janet McDonough, Ph.D., that "the claimant had marked limitation in the area of cognitive/communication function . . .." In addition, she had received speech therapy from the first through the fourth grades.

If this were the only evidence in the record, we might well agree that the claimant's speech impairment has not been shown to be something separate from her low I.Q. Evidence developed only four days before the filing of the ALJ's opinion, but too late to be discussed in the opinion, however, casts this record in a significantly different light. Our dissenting colleague, post p. 8, minimizes this evidence on the ground that it comes only from one expert evaluator, referring to "a one-time evaluator's recommendation, submitted after the ALJ's decision, that Ms. Jones continue with speech therapy." With respect, we read the record somewhat differently. The full report from the University of Iowa Hospitals and Clinics, Exhibit AC-1 before the Appeals Council, is instructive. The attending physician, Don C. Van Dyke, M.D., first noted that the claimant had "a long-standing history of educational problems . . .." Id. at 244. He then added: "She needed speech therapy in school. She is still involved with speech therapy." Id. at 245. She has "[a] long history of language problems and school difficulty." Ibid. She has "[a] long history of speech problems and right now is still continuing to get articulation therapy." Ibid. Dr. Van Dyke then gave his impression, id. at 246, and he gave it, significantly we think, in two parts:

1. Borderline intellectual abilities
2. Articulation deficits

The indication is that Dr. Van Dyke considered the claimant's articulation deficits, or speech defect, as an impairment distinct from her borderline intellectual abilities.

Further, Judy Jordan, M.S., also of the University of Iowa, referred to the claimant's "language-based learning disorder." Id. at 247. A speech and language evaluation by two other experts added details:

> Many errors resulted from the omission of words, substitution of words, and rearranging of the syntactical structure.

Id. at 250.

> Her errors largely consisted of word substitutions, (i.e., "foot" for "fort") and reversals in word order.

Id. at 251.

The report concluded:

> In view of today's findings, it is recommended that Rasheeda receive support services in educational settings. Rasheeda will benefit from clarification of language presented utilizing basic vocabulary terms. In addition, visual cues, such as word webs, graphs, and other pictures and/or illustrations, would be beneficial for Rasheeda to improve her comprehension of language.

Id. at 251. The entire report was approved not only by Dr. Van Dyke, an associate professor of pediatrics, but also by Mary Corbin, LISW, Service Facilitator. The

Appeals Council considered the additional evidence, id. at 5, but made no specific determination or finding about a speech impairment. Certainly it did not find either that the claimant's speech impairment was "slight or minimal," or that her speech impairment was not a condition distinct from her low I.Q.

In these circumstances, and given the appropriateness of additional treatment, we cannot see how the speech impairment can fairly be characterized as "slight or minimal." Nor can it be viewed as simply a peripheral effect of her low intelligence, since the problem has persisted from an early age, and specific treatment for the condition has been recommended. The problem is not merely one of cognition (I.Q.), but also of expression (for example, an inability to put words in the proper order). Communications difficulty is a real impairment that limits claimant's employment opportunities to the rare job which requires no regular, responsive communication. To be sure, there is evidence in the record that points the other way, as the dissent properly emphasizes, but the overwhelming weight of the most recent evidence is in favor of the claimant.

The Commissioner argues that Ms. Jones's speech impairment is not so severe as that of the claimant in Bailey v. Apfel, 230 F.3d 1063 (8th Cir. 2000), a similar case cited and distinguished by the District Court. This may well be true. The question before us, however, is not simply whether Ms. Jones's speech difficulties are as severe as Bailey's were. The question, instead, is whether substantial evidence on the record as a whole can support a finding that Ms. Jones's difficulties are "slight or minimal." We hold that it cannot.

Accordingly, the judgment of the District Court is reversed, and this cause is remanded to that Court with instructions to remand the matter to the Commissioner for the computation and award of benefits.

It is so ordered.

HANSEN, Circuit Judge, dissenting.

Because there is substantial evidence on the whole record to support the decision of the Commissioner to deny benefits in this case, I respectfully dissent.

There is no dispute that Ms. Jones meets the IQ requirement of the mental retardation listing for adults (Listing 12.05(C)) and for children (Listing 112.05(D)). The only issue on appeal is whether she also meets the second requirement of those listings – that of "a physical or other mental impairment" that imposes an "additional and significant limitation of function" (to satisfy the child listing) and an "additional and significant work-related limitation of function" (to satisfy the adult listing). Having considered the evidence in this record, I conclude that the Commissioner's decision is supported by substantial evidence.

The court today finds that Ms. Jones is disabled after concluding that a speech impairment satisfies the second requirement of the adult and child listings for mental retardation because the speech impairment has more than a slight or minimal effect on her ability to function or to work. As the court notes, the ALJ did not find the existence of a speech impairment, and I note that no one at the hearing testified that Ms. Jones suffered from a speech impediment. The court nevertheless concludes that it exists and that it has more than a slight or minimal effect on her ability to function and work based on the following evidence: (1) a limitation that the ALJ chose to include in the hypothetical question precluding public speaking, and (2) a one-time evaluator's recommendation, submitted after the ALJ's decision, that Ms. Jones continue with speech therapy. In my opinion, this evidence is not a sufficient basis on which to conclude that the Commissioner's decision is not based on substantial evidence.

First, after reviewing the record, I am convinced that the ALJ's limitation in the hypothetical question–that Ms. Jones was unsuited to any work involving public

speaking– was not based on Ms. Jones's speech impediment, but on her testimony that she becomes nervous "in front of people." (R. at 18.) Ms. Jones's complete comment at the hearing before the ALJ, in response to her attorney's question of what makes her nervous, was that she gets nervous "[w]hen I have to be in front of people or have to say a speech or something." (R. at 62.) There was no indication that this limitation was caused by a speech impediment. In fact, there was no mention of a speech impediment at all during the hearing before the ALJ. There is no indication from the transcriptions or the ALJ's comments that anyone noticed a speech impediment or had difficulty understanding Ms. Jones. Ms. Jones's mother did not testify that Ms. Jones had a speech impediment but was solely concerned with her ability to understand language. Not once during the hearing did Ms. Jones's attorney ask either Ms. Jones or her mother about an articulation problem. Thus, this public speaking limitation cannot be isolated as an indication that she suffers from a speech impediment that has more than a slight or minimal effect on the claimant's ability to function or perform work. The record indicates that the public speaking limitation is a product of nervousness, and no other limitation in the hypothetical question deals with a speech impediment.

Second, the court also relies on statements by one expert evaluator from University of Iowa Health Care. Again, this evidence is not a sufficient basis on which to conclude that the ALJ's decision is not supported by substantial evidence. This evaluator's statements are found in a collection of reports comprising a comprehensive developmental evaluation, which Ms. Jones's mother pursued in an attempt to help Ms. Jones succeed in college. The report was submitted after the ALJ's decision but was considered and rejected by the agency Appeals Council as not providing a basis for changing the ALJ's recommendation. See Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000) ("In these circumstances, we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination.")

The report indicates that one physician noted articulation deficits and encouraged her to continue with speech therapy.  On the other hand, in the same report, the speech and language expert evaluators discussed only language comprehension problems, which are cited in the court's opinion today.  These specialists mentioned no speech or articulation problems in their portion of the report.  Specifically, the speech and language experts observed that Ms. Jones's "[p]itch, intensity, and vocal quality appeared adequate, and no concerns regarding fluency were noted."  (R. at 250.)  The word substitution errors quoted by the court were noted in the results of a learning aptitude subtest, not as part of any discussion regarding speech impediments.  The speech expert evaluators recommended support services and the use of simple language in educational settings, but notably, they did not mention a need for speech therapy or the diagnosis of any articulation disorder.  The agency was free to give greater weight to this and other evidence in the record, which is discussed more fully below.  When there is conflicting evidence on the record, it is the function of the ALJ, not this court, to resolve those conflicts.  Cabrnoch v. Bowen, 881 F.2d 561, 564 (8th Cir. 1989).

Other evidence in the record also indicates the following.  Ms. Jones's mother indicated on the SSI application that Ms. Jones had speech therapy in school from the first through the fourth grade.  (R. at 118.)  She did not report ongoing speech therapy, and there is no record evidence from any currently treating speech therapist.  School reports from high school indicate that Ms. Jones's communication skills are adequate for her communicative purposes, though language organizational skills continue to be an area of difficulty.  (R. at 159.)  Ms. Ogden, a school psychologist who prepared a confidential student report in 1998 by evaluating Ms. Jones's performance, reviewing her school records, and interviewing teachers, does not report the existence of any speech impediment or any complaints from teachers or employers regarding Ms. Jones's speech articulation.

-10-

The court's opinion states that Ms. Jones's speech impediment limits her "to the rare job which requires no regular, responsive communication." Supra at 7. In fact, the only speech restrictions listed by the ALJ were "no public speaking to groups of people and no reading aloud," (R. at 35), neither of which indicates a limitation on responsive communication. Similarly, the new evaluation does not suggest that Ms. Jones is limited by her speech impediment to jobs requiring no responsive communication. Thus, I would conclude that there is substantial evidence to support the Commissioner's decision to deny benefits, because any speech impediment has no more than a slight or minimal effect on Ms. Jones's ability to work or function.

The court's opinion states that Ms. Jones's speech impediment is entirely separate from her low intelligence. The Commissioner cites a policy interpretation ruling, SSR 98-1p, 1998 WL 147011 (Mar. 30, 1998), that provides guidance for determining when a child has a speech limitation. This policy interpretation indicates that a speech impediment "must be separate from [the] mild mental retardation" in order for it to qualify as an additional impairment under the listings. Id. The ruling states:

> It is possible for a child with mental retardation to have limitations in speech that do not constitute an impairment separate from the mental retardation. In a child with mental retardation, speech development is often commensurate with the level of cognitive functioning. Therefore, in the absence of an impairment of speech that is separate from the child's mental retardation, a speech pattern that has been and continues to be consistent with the child's general intellectual functioning is not regarded as separate from the mental retardation and will not be found to satisfy the . . . physical or other mental impairment [requirement].

Id. On the other hand, when the origin of the speech problem is unknown, it may still be separate from the mental retardation if shown to be significantly below that which would be expected given the claimant's level of cognitive functioning. Id. We generally give deference to the agency's rulings on its own regulations. See Ingram

-11-

v. Barnhart, 303 F.3d 890, 894 (8th Cir. 2002); see also Lowery v. Barnhart, 2003 WL 236419 at *3 (6th Cir. 2003) (unpublished) (deferring to SSR 98-1p as a reasonable agency ruling).

After thoroughly reviewing the record in this case, I can find no evidence concerning the etiology or severity of Ms. Jones's speech impediment on which to base a conclusion that the problem is separate from her mild mental retardation. There is no indication that Ms. Jones's speech development is significantly below what would normally be expected given her level of cognitive functioning. To the contrary, there is a report from a medical consultant for the State of Iowa Disability Determination Services indicating that Ms. Jones's "[c]ommunication skills are generally consistent with her over-all cognitive ability, and are not significantly limited." (R. at 232.) Consistent with this opinion, a student report from Ms. Jones's high school indicates that while her organizational language skills continue to be an area of difficulty, her speech and language skills were thought to be "adequate for her communicative purposes." (R. at 159.) The comprehensive evaluation from the University of Iowa Health Care specialists contains no discussion of the origin, cause, or severity of Ms. Jones's speech articulation problems. Similarly, there is no opinion expressed that her speech articulation was significantly below what would be expected for someone of her cognitive ability. A general encouragement to continue with speech therapy to aid her in college, without further analysis or even a description of how the impediment manifests itself in or affects this claimant, is simply insufficient to demonstrate an additional impairment, beyond the mild mental retardation itself, that significantly affects the claimant's ability to function or perform work-related tasks. See SSR 98-1p (recommending that evidence of the severity of a speech limitation should include the results of a comprehensive examination of the claimant's speech and descriptions of the claimant's speech in daily circumstances by both lay and professional sources).

The court's opinion dismisses the significance of the <u>Bailey</u> case. While I agree that it does not control the outcome in this case, I find that it provides valuable guidance. In <u>Bailey</u>, the speech pathologists indicated that the claimant's speech was intelligible and yet there was evidence that a former employer indicated he had difficulty understanding Bailey, and speech tests indicated a severe articulation disorder. 230 F.3d at 1066. This lay and professional testimony provided some evidence of the severity of the speech impediment on which to conclude that the problem was more than slight or minimal. Additionally, the court ultimately concluded that Bailey's speech impediment, "combined with his inability to read and write," severely limited his work-related function. <u>Id.</u> While the work-related limiting function need only be more than slight or minimal, there must be some evidence of the severity of the disorder on which to base such a conclusion. The record in this case provides neither lay nor professional descriptions of the severity of any articulation disorder or the intelligibility of her speech on which to conclude that it results in more than a minimal work-related limitation.

Ms. Jones also asserts that her language-based learning disorder and a mathematics disorder are specific learning disabilities that satisfy the other impairment requirement of the mental retardation listings. I disagree. Again, when the ALJ reviewed the record, it contained no evidence of specific learning disabilities. In the later submitted evaluation from the University of Iowa Health Care specialists, an education evaluator concluded that Ms. Jones has a language-based learning disorder and a mathematics disorder. This is the only mention in the record of specific learning disabilities, and it is contradicted by Ms. Jones's school reports.

Ms. Ogden's confidential student report indicates that when Ms. Jones was in eleventh grade, the school gave Ms. Jones's mother a choice of designating Ms. Jones as within the category of mental disability or learning disability. Her mother chose the mental disability category because of the probable greater access to adult services. Ms. Ogden concurred in the appropriateness of this designation (R. at 191), and also

concluded that "[t]here is no evidence to suggest a specific learning disability" (R. at 193). Ms. Ogden noted that teachers rated Ms. Jones as within the average range on adaptive behaviors. The University of Iowa Health Care speech and language evaluators noted that Ms. Jones had significant defects in her ability to comprehend language as compared to others her age, but they made no comparison of her abilities to others who are of a comparable cognitive ability.

While the University of Iowa Health Care education evaluator concluded that Ms. Jones's math scores were so low that they were "not considered to be commensurate with her cognitive profile," (R. at 247), no other evidence contains a diagnosis of a math-based learning disability. The state medical consultant, Janet S. McDonough, Ph.D., noted, consistent with the school records, that while Ms. Jones's scores were somewhat lower than expected, they were not low enough to qualify for an additional label of learning disability. (R. at 231.) On this record, the agency was free to weigh the competing expert testimony and give less weight to the recently submitted one-time evaluator. The record supports the Commissioner's implicit conclusion that in this case, Ms. Jones's communication and mathematical difficulties are merely a manifestation of the mild mental retardation. See Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000).

"We are not permitted to reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently." Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003) (internal quotations omitted). Accordingly, I would affirm the denial of benefits.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-