# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4142

_____

Douglas A. Maresh,

        Appellant,

v.

Jo Anne B. Barnhart,
Commissioner of Social Security,

        Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Southern
\*  District of Iowa.
\*
\*
\*
\*

_____

Submitted: September 13, 2005
Filed: February 27, 2006

_____

Before MELLOY, LAY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The district court affirmed the decision that Douglas A. Maresh is not entitled to disability-insurance benefits and supplemental-security income because he has the capacity to work. Maresh appeals. Because he meets Listing 12.05C, this court reverses and remands with directions to award benefits.

This court reviews *de novo* a district court's denial of social security benefits. *See Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). This court determines "whether the Commissioner's decision is supported by substantial evidence in the record as a whole." **Davis v. Apfel**, 239 F.3d 962, 966 (8th Cir. 2001). Substantial evidence "is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." **McKinney v. Apfel**, 228 F.3d 860, 863 (8th Cir. 2000). This court will "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." **Id.**

Maresh argues that the ALJ erred in finding that his impairments do not meet Listing 12.05:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> * * *
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05.

Maresh and the Commissioner disagree about what the Listing requires. According to the Commissioner, the introductory paragraph of the Listing requires

that the deficits in adaptive functioning are initially manifested before age 22. According to Maresh, the introductory paragraph is merely an introduction that sets no requirements. Under Maresh's interpretation, he need only meet part C's requirements of (1) an IQ score of 60 through 70; and (2) an additional and significant work-related limitation of function.

This court agrees with the Commissioner that the requirements in the introductory paragraph are mandatory. The overall introduction to the mental disorders section states: "Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing." *Id* at § 12.00.[1] The cases Maresh cites are not to the contrary, because they do not discuss whether the introductory paragraph is mandatory. *See* ***Chunn v. Barnhart***, 397 F.3d 667 (8th Cir. 2005); ***Jones v. Barnhart***, 335 F.3d 697 (8th Cir. 2003); ***Sird v. Chater***, 105 F.3d 401 (8th Cir. 1997). Under the plain language of the regulations, a claimant must demonstrate or support onset of the impairment before age 22.

However, this court disagrees with the Commissioner that the Listing's introductory paragraph requires a formal diagnosis of mental retardation. The plain language of the Listing does not so state, and the Commissioner cites no supporting

---

[1]Maresh argues that this court should apply the version of the regulations in effect before their amendment in 2000, *see* 65 Fed. Reg. 50,746-01. However, Maresh's hearing did not take place until 2002—after the regulations were amended. *See* ***Russell v. Chater***, 91 F.3d 63, 65 n.1 (8th Cir. 1996) (per curiam) (declining to consider amendments to the Social Security Act not in effect at the time of the claimant's hearing).

authority. This court also rejects the Commissioner's assertion that Maresh is not entitled to benefits, applying the definition of mental retardation in the Diagnostic and Statistical Manual of Mental Disorders–Fourth Edition (DSM-IV). In revising the Listings of Impairments in 2002, the Commissioner rejected a proposal that the DSM's definition be used for Listing 12.05. *See* 67 Fed. Reg. 20,022.

In sum, to meet Listing 12.05C, a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. Because the Commissioner does not contest that Maresh meets the first requirement, this court focuses on requirements 2 and 3.

Although the ALJ did not address the issue, the record indicates that Maresh's mental retardation initially manifested itself before age 22. Maresh struggled in special education classes through the ninth grade, and then dropped out of school. The Commissioner concedes that Maresh had trouble with reading, writing, and math. In addition, Maresh emphasizes his verbal IQ score of 70, recorded at age 37. True, the score was recorded after the developmental period, but "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *see also* 65 Fed. Reg. 50,753 (2000) (explaining that the regulations "permit us to use judgment, based on *current evidence*, to infer when the impairment began.") (emphasis added). Maresh also exhibited deficits in adaptive functioning at a young age, when he had frequent fights with other children. Based on the substantial evidence, the ALJ should have found that Maresh's impairment manifested itself during his developmental period.

The third requirement of Listing 12.05C is that the claimant has a physical or other mental impairment imposing an additional and significant work-related limitation of function, i.e., a "more than slight or minimal" effect on the ability to perform work. ***Buckner v. Apfel***, 213 F.3d 1006, 1011 (8th Cir. 2000) (quoting ***Cook v. Bowen***, 797 F.2d 687, 690 (8th Cir. 1986)). Although the ALJ did not specifically discuss Listing 12.05C, she did find that Maresh's personality disorder was "severe." That finding is well supported by the record. Dr. Hammer, a licensed psychologist who examined Maresh in January 1998, states:

> [Maresh's work history] is marked with short couple of weeks of employment terminated because of difficulties with supervisors, co-workers, or his temper.
>
> . . . .
>
> He reports a suspiciousness and distrust of others "all" his life. He doubts the trustworthiness of friends, is reluctant to confide in others, misinterprets benign remarks, is unforgiving and persistently carries grudges, and overreacts to benign comments with angry counterattacks.
>
> . . . .
>
> His greater difficulties . . . will be found in his demonstrated inability to get along with others, be they supervisors, co-workers, or the public. Also, his lack of impulse controls will interfere with his ability to exercise good judgment and his ability to appropriately adapt to changes in the work place.

In a separate evaluation, psychologist Dr. James N. Marchman diagnosed Maresh with personality disorder, and noted that he "interacts poorly with supervisors, coworkers, and the public." The findings of Drs. Hamer and Maresh demonstrate that Maresh's personality disorder would have more than a slight or minimal effect on his ability to work. ***See Bailey v. Apfel***, 230 F.3d 1063, 1066 (8th Cir. 2000) (speech disorder was more than slight or minimal because speech was "noticeably in error," albeit intelligible.)

True, clinical psychologist Dr. Dee E. Wright completed a medical summary form asserting that Maresh's functional limitations do not satisfy Listing 12.05. However, Dr. Wright did not examine Maresh, but only reviewed his medical records. Further, Dr. Wright's report does not support her conclusion. She indicates that Maresh has "[p]athologically inappropriate suspiciousness or hostility" as well as "[i]ntense and unstable personal relationships and impulsive and damaging behavior." Dr. Wright also records that Maresh would have "moderate" difficulties in maintaining social functioning, as well as "moderate" deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. She further notes that Maresh is moderately limited in the ability to work in coordination with or proximity to others without being distracted. Dr. Wright's specific observations contradict her general conclusion that Maresh does not meet Listing 12.05.

Additional evidence confirms that Maresh's personality disorder satisfies the Listing. Maresh reported to his physician in 1998 that his neighbors had called the police after he became upset and began destroying his own car. He further reported homicidal thoughts about his father, and that Maresh once waited on the porch with a shotgun after becoming upset with another man. Maresh's clinical social worker also reported that he "has one of the most disabling personality disorders I have seen in my eleven years at the mental health center." In sum, Maresh has shown that his personality disorder would have more than a "slight or minimal" effect on his ability to work. *Buckner*, 213 F.3d at 1011. Accordingly, he meets Listing 12.05C. *See Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) (reversing denial of benefits because substantial evidence showed that claimant met Listing 12.05C).

II.

The Commissioner argues that Maresh's mental retardation does not preclude him from working, noting he worked for General Mills for about a year and a half in 2000 and 2001, although he often missed work there.[2] However, "[t]he issue is not whether the claimant can perform gainful activity; rather, it is whether he has a[n] . . . impairment, other than his conceded mental impairment, which provides significant work-related limited function—in other words, whether the second prong of § 12.05(C) is met." *Sird*, 105 F.3d at 403 (reversing ALJ's denial of benefits for a claimant who met Listing 12.05C). Because Maresh meets Listing 12.05C, he is entitled to benefits.[3] *See Jones*, 335 F.3d at 699 ("If the claimant wins at the third step (a listed impairment), she must be held disabled, and the case is over.")

III.

The ALJ's decision to deny benefits is not supported by substantial evidence on the record. The district court's judgment is reversed, and the case remanded to the Commissioner with directions to award benefits.

——————————————————

[2]Maresh testified that he often missed work at General Mills, in part due to his mental impairments. General Mills reported that, relative to its other employees, Maresh's absences were "frequent." As the vocational expert testified, such absences would preclude employment.

[3]The parties dispute whether Maresh is entitled to benefits for those periods in 2000 and 2001 where he may have engaged in substantial gainful activity. This court leaves to the remand the determination of the specific periods of disability.