# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3908

_____

Thomas A. Christner,     *
                *
    Appellant,     *
                * Appeal from the United States
   v.          * District Court for the Southern
                * District of Iowa.
Michael J. Astrue,[1]     *
                *
    Appellee.     *

_____

Submitted: June 14, 2007
Filed: August 16, 2007

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Thomas Christner applied for Supplemental Security Income (SSI) benefits on January 1, 2002, based upon hepatitis C, diabetes, and neuropathy in his legs. His ALJ hearing was held September 29, 2004. He has been denied benefits at every stage to-date. For the reasons stated herein, we reverse the judgment of the district court and remand for reconsideration by the ALJ.

_____

[1]Michael J. Astrue has been appointed to serve as Commissioner of Social Security, and is substituted as appellee pursuant to Federal Rule of Appellate Procedure 43(c)(2).

## I.     BACKGROUND

Christner is a diabetic and claims he suffers from hepatitis C, with complaints of leg pain, fatigue, back pain, and extremity numbness and pain, among other ailments. At the time of the hearing, the evidence revealed Christner's repeated failure to properly manage his diabetes despite the orders and assistance offered by several of his treating physicians. Christner's IQ test revealed a verbal IQ of 61, a performance IQ of 63, and a full scale IQ of 58. His global assessment of functioning (GAF) rating in March 2002 was 60. Christner cannot read or write, has a sixth grade education, and participated in special education classes when he was in school. Christner used to work as a tree trimmer on his own but he no longer works in this capacity. Christner has not worked since he filed his application in November 2001.

Dr. Arnold completed two functional capacity questionnaires in October 2003, basically restating Christner's uncontrolled blood sugar, leg pain, back pain, dizziness and generalized body aches. In one questionnaire, Dr. Arnold stated that Christner was mentally capable of "high stress" work, and in another the doctor stated that Christner was incapable of even "low stress" work because his only training was in tree trimming and he was mentally limited when it came to retraining. Dr. Arnold appears to have treated Christner from at least September 2003 through some time in early 2004. According to Christner, the ALJ discounted Dr. Arnold's opinions.

At the hearing, the ALJ was presented with testimony and/or medical records from physicians who treated Christner from March 2001 through the time of the hearing, all of which revealed a continual lack of diabetes management and steady complaints of the ailments set forth above. At the hearing, the ALJ also heard the testimony of Dr. Paul From, a medical expert. Dr. From opined, among other things, that Christner's complaints were out of proportion to the objective medical evidence.

Following the five-step process outlined in 20 C.F.R. § 416.920, the ALJ found that Christner was not gainfully employed; that Christner's insulin-dependent diabetes and neuropathy, partial amputation of the third and fourth digits of his left hand, and organic mental disorder and depression are "severe;" and that those impairments do not meet or equal in severity the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ further determined that Christner was unable to perform any of his past relevant work but could perform light work with occasional lifting of twenty pounds and frequent lifting of ten pounds. The ALJ opined that Christner could stand and walk, or sit, with normal breaks for six hours each day, and that he had no limitations in pushing and pulling, with occasional climbing, balancing, kneeling, crouching, and crawling possible. The vocational expert (VE) testified that Christner would be limited to unskilled work activity, suggesting: (1) photocopy machine operator, (2) shoe shiner, (3) table worker, (4) surveillance systems monitor, and (5) tube operator. Each of the suggested positions requires at a minimum an ability to subtract two-digit numbers, and to multiply and divide tens and hundreds by two. On this evidence, the ALJ denied Christner benefits.

## II.    DISCUSSION

Our task is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole. Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). "Substantial evidence 'is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" Chunn v. Barnhart, 397 F.3d 667, 671 (8th Cir. 2005) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). We consider evidence that detracts from the decision as well as evidence that supports it. Porch v. Chater, 115 F.3d 567, 571 (8th Cir. 1997). The ALJ must apply a sequential analysis to determine if a claimant is disabled, specifically whether the claimant is not currently working and has a severe impairment; whether this impairment meets or equals a listed impairment; if not, whether the impairment prevents the claimant from returning to his past relevant

work; and, if so, whether the impairment prevents the claimant from performing other work in light of his age, education, and past work experience. 20 C.F.R. § 416.920. Further, it is the ALJ's duty to investigate a claim presented at the time of the application or offered at the hearing as a basis for disability. Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003); Battles v. Shalala, 36 F.3d 43, 44-45 (8th Cir. 1994) (recognizing that the ALJ has an obligation to investigate a claim not presented in the application for benefits when testimony at the hearing places him on notice of the need for further inquiry).

Christner's main argument on appeal is that the ALJ did not adequately take into account the listing for mental retardation under section 12.05(B) and (C). We agree. Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app.1, § 12.05. A claimant who is found to be mentally retarded under this listing is presumed disabled at step three without further inquiry. 20 C.F.R. § 416.920(a)(4)(iii). A claimant will be considered mentally retarded if he meets one of four sets of requirements, including the requirement contained in section 12.05(B): "[a] valid verbal, performance, or full scale IQ of 59 or less."

Christner argues that he meets the listing requirements in either section 12.05(B) or (C). He does satisfy section 12.05(B). Christner's valid full scale IQ was 58 and the ALJ does not question the validity of the IQ test. However, the ALJ held that despite Christner meeting the threshold requirement under section 12.05 of the listing of impairments for mental retardation, there was no evidence that his deficits pre-dated age twenty-two, the examining psychologist did not diagnose mental retardation, and Christner's attorney failed to present persuasive evidence that Christner's impairments were of listing-level severity. Thus, the ALJ moved on in the

five-step analysis to discuss Christner's residual functional capacity. Here, the ALJ's reasoning was faulty.

First, contrary to the ALJ's determination, there is some circumstantial evidence to support the fact that Christner's deficiency manifested before age twenty-two, as section 12.05 also requires. In Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006), the ALJ denied benefits to a man who had an IQ score of 60 through 70. The ALJ did not address section 12.05 but the Eighth Circuit panel addressed whether the claimant had an additional significant work-related limitation of function, as required under the section 12.05(C) analysis, ultimately determining that the claimant's personality disorder (defined by the ALJ as "severe") sufficed. Id. at 901. In doing so, the panel held there was sufficient evidence that the claimant's mental retardation manifested before age twenty-two, as inferred from Maresh's struggles in special education classes through the ninth grade. Id. at 900. Accordingly, the court determined that the claimant met the section 12.05 listing and that there was not substantial evidence to support the ALJ's determination that he could work. Here, like Maresh, there was evidence of manifestation before age twenty-two, including Christner's low-grade dropout and participation in prior special education classes. Christner likely met his burden of establishing onset before age twenty-two.

Second, we have specifically held that a formal diagnosis of mental retardation is not required to fall within the confines of section 12.05. Id. at 899. Thus, it is clear that claimants need only meet the listing requirements stated in section 12.05. Id. The ALJ erred in giving any credence to the lack of a diagnosed mental deficiency in Christner's case.

The Commissioner argues that even though Christner's IQ scores *were* within the section 12.05 range, the ALJ properly rejected these scores as inconsistent with the record, recognizing that Christner did not exhibit the sort of deficit in adaptive functioning contemplated by section 12.05. It is true that "[a]n ALJ may disregard a

claimant's IQ score when it is derived from a one-time examination by a non-treating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior." Muncy v. Apfel, 247 F.3d 728, 733 (8th Cir. 2001).

It was in assessing Christner's residual functional capacity at steps four and five, that the ALJ first noted that even though Christner's intelligence testing scores placed him in the "extremely low range of intelligence," Christner appeared, among other things, logical and "goal-directed" at the time of testing, and the testing physician felt that Christner was "quite capable in non-intellectual areas of adaptative functioning." Whether this is an express rejection of Christner's full scale IQ score is unclear. This colloquy came as part of the ALJ's determination that there was work that Christner could perform and not specifically as a means of discounting Christner's low IQ score. However, given our precedent that there are times when IQ scores that fall within listing ranges can be rejected, our ultimate inquiry is whether there is substantial evidence to support the ALJ's rejection of Christner's IQ score given the remaining evidence, if a rejection indeed occurred.

Based on this evidence, and the ALJ's discussion thereof, we hold that reconsideration is prudent as to whether there is substantial evidence that would remove Christner from the impairment listing for mental retardation. Dr. Murphy deduced that Christner was functioning within the "extremely low range of intelligence," and that although Christner might interact appropriately with others, he may need assistance in managing his own funds and he exhibited "[s]evere deficits . . . in most areas, including expressive vocabulary, abstract reasoning, general fund of knowledge, practical judgment, and working memory." The record evidence does not belie this assessment. Christner worked intermittently as a tree trimmer for most of his life, he dropped out of school at a low grade (possibly sixth or eighth grade), attended special education classes when he was in school, does not live independently, and is unable to read or write. See Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir. 2000) (awarding benefits to a claimant who did not live independently, had daily

activities consisting of watching television and visiting with friends, could not keep jobs because he was slow and had limited work history). "Mental retardation is not normally a condition that improves as an affected person ages." Muncy, 247 F.3d at 734. Christner's prior work history, modest functional abilities, and educational background strongly support the IQ score reflecting mental retardation. Accordingly, because it is unclear to us whether the ALJ expressly rejected Christner's IQ score, and because the ALJ erroneously credited a lack of medical diagnoses of mental retardation, we remand to the ALJ for reconsideration.

## III.   CONCLUSION

Because we conclude Christner meets listing 12.05(B) but are unable to ascertain an express rejection of that finding in the proper step of the analysis, we reverse the judgment of the district court, and remand the case with instructions to remand to the Commissioner for reconsideration.

_____