**Susan Angela LEE, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**No. 3:14–cv–13 RP–CFB.**

United States District Court, S.D. Iowa, Davenport Division.

Signed June 25, 2014.

Blake Parker, Blake Parker Law Office, Clinton, IA, for Plaintiff.

William C. Purdy, U.S. Attorney's Office, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT W. PRATT, District Judge.

Plaintiff, Susan Angela Lee, filed a Complaint in this Court on January 16, 2014, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

Plaintiff filed an application for disability benefits April 6, 2010 Tr. at 140–46 & 147–150. Plaintiff, whose date of birth is December 15, 1959, (Tr. at 140) was 52 years old (Tr. at 38) at the time of the hearing on August 1, 2012, before Administrative Law Judge John E. Sandbothe (ALJ). Tr. at 34–59. The ALJ issued a Notice Of Decision—Unfavorable on September 11, 2012.

Tr. at 8–23. The Appeals Council declined to review the ALJ's decision on December 19, 2013. Tr. at 1–4. Thereafter, Plaintiff commenced this action.

In her application for Title II benefits, Plaintiff stated she became unable to work because of her disabling condition on December 31, 2007. Tr. at 140. At the first step of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability date. Tr. at 13. At the second step, the ALJ found Plaintiff has the following severe impairments: history of polysubstance abuse and dependence; dysthymia; depression; PTSD; ADHD; learning disorder; borderline intellectual functioning; antisocial personality disorder; borderline personality disorder with dependent features; calcified tendonitis of the left shoulder and degenerative changes of the cervical spine. The ALJ found that none of the severe impairments were severe enough to meet or equal a listed impairment. Tr. at 14. At the fourth step, that ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) such that she could lift 20 pounds occasionally and 10 pounds frequently; occasionally balance, stoop, crouch, kneel, crawl and climb; no overhead reaching with the left arm; simple routine repetitive work; no contact with the public and no more than a regular pace.

Tr. at 15. The ALJ found that Plaintiff is unable to perform her past relevant work. Tr. at 18. At the fifth step, the ALJ found that Plaintiff is able to do a significant number of jobs examples of which include assembler of small products, marker, and laundry folder. The ALJ found that Plain-

tiff is not disabled nor entitled to the benefits for which she applied. Tr. at 23.

### DISCUSSION

██ We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts from the ALJ's decision. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir.2004).

We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir.2008). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola [v. Astrue]*, 480 F.3d [885] at 886 [ (8th Cir.2007) ] ). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005). *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir.2008). In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel*, 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir.1975).

In arriving at the decision in this case, the ALJ followed the five step sequential evaluation process set forth at 20 C.F.R. § 404.1520(a)-(g). "If a claimant can be classified at any step, the Commissioner does not go on to the next step. 20 C.F.R. § 404.1520(a)(4)." *Brown v. Barnhart*, 390 F.3d 535, 538 (8th Cir.2004) (discussing the steps of the sequential evaluation).

██ In this case, error arises at the third step of the sequential evaluation. The ALJ correctly set forth the requirements of a step three analysis:

> At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Tr. at 12–13. *See also*, 20 C.F.R. § 404.1520(a)(4)(i)-(v) describing the sequential evaluation process. This same section at (d) states that if an impairment(s) meets or equals a listed impairment, disability will be found "without considering your age, education, and work experience."

At the beginning of his analysis, the ALJ again correctly states that he considered whether Plaintiff's mental impairments meet or medically equal a listed impairment. "More specifically, the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.06 (anxiety related disorders) and 12.08 (personality disorders)." Tr. at 14. Thereafter, however, the ALJ only considers whether any

of those sections of the listings are met. According to the introductory paragraphs, these sections of the listings consists of a statement describing the disorders—paragraph A criteria—and a set of impairment-related functional limitations—paragraph B criteria. Sections 12.02, 12.04, and 12.06 also have additional functional criteria known as paragraph C criteria which is only assessed if the paragraph B criteria are not satisfied. The ALJ found that neither the paragraph B or paragraph C criteria were met for any of the assessed impairments. Tr. at 14–15. The Court does not disagree, nor does Plaintiff argue, that the aforementioned listings were not met. However, the ALJ failed to consider whether or not Plaintiff met or medically equaled the criteria set forth in Section 12.05C mental retardation in spite of the finding that borderline intellectual functioning was found to be a severe impairment at step two.

In *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir.2003), the Court observed that the Commissioner's instructions, found in the Program Operations Manual System (POMS) § DI 24515.056, for determining medical equivalence states that listing 12.05C is equaled when there is an IQ score which falls between 70 and 75 in the presence of another severe physical or mental impairment. *Id.* at FN 7. The Court held that substantial evidence on the record as a whole established that Shontos' borderline IQ along with other severe impairments entitled her to an award of benefits. *Id.* at 427.

In *Phillips v. Colvin*, 721 F.3d 623, 629 (8th Cir.2013), the Court referred to *Shontos* as the Circuit's leading case on medical equivalence. Phillips claim of medical equivalence to listing 12.05C was rejected because he did not have another physical or mental impairment which imposed additional and significant work-related limitation of function. Here, Plaintiff suffers from numerous severe physical and mental impairments in addition to borderline intellectual functioning, all of which limit Plaintiff's ability to function.

█ In the case at bar, Plaintiff's intellectual functioning was determined by licensed psychologist, John W. Keraus, Ph.D. (Tr. at 589–96) who administered the Wechsler Adult Intelligence Scale–Fourth Edition, among other psychological tests. Tr. at 591. Plaintiff scored 74 on the Verbal Comprehension Scale (Id.), 81 on the Perceptual Reasoning Scale, 71 on Working Memory Scale, all of which rendered a full scale IQ score of 75[1]. Dr. Keraus wrote that his testing shows that Plaintiff was "just a percentage point above technically qualifying for mild intellectual disability. She is a slower learner with a mental age equivalent of thirteen years." Tr. at 595.

In *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir.2006), the Court wrote that in order to meet the Listing 12.05(C), three things must be shown: 1) a valid verbal, performance, or full scale IQ of 60 through 70; 2) an onset of the impairment before age 22; and, 3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Id.* at 899. Maresh argued that he need only show the 1st and 3rd require-

---

1. The WAIS–IV replaced the WAIS–III in 2008. The terms "Verbal IQ" and "Performance IQ" from the WAIS–III were replaced with "Verbal Comprehension" and "Perceptual Reasoning" in the WAIS–IV. Verbal Comprehension and Perceptual Reasoning should be substituted for Verbal IQ and Performance IQ, respectively. *Troxel v. Colvin*, 2014 WL 1323637 at *8, FN 3, 2014 U.S. Dist. LEXIS 45703 at *22, FN 3 (N.D.Iowa 2014), citing *Pierson v. Colvin*, 960 F.Supp.2d 933, 936–37 nn. 4, 5 (S.D.Iowa 2013)(discussing the terminology changes from the WAIS–III to WAIS–IV).

ment in order to meet the Listing. The Court disagreed. Addressing the evidence in the record before the Court regarding the second requirement—an onset before age 22—the Court wrote:

Although the ALJ did not address the issue, the record indicates that Maresh's mental retardation initially manifested itself before age 22. Maresh struggled in special education classes through the ninth grade, and then dropped out of school. The Commissioner concedes that Maresh had trouble with reading, writing, and math. In addition, Maresh emphasizes his verbal IQ score of 70, recorded at age 37. True, the score was recorded after the developmental period, but "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *Muncy v. Appel*, 247 F.3d 728, 734 (8th Cir.2001); *see also* 65 Fed.Reg. 50,753 (2000) (explaining that the regulations "permit us to use judgment, based on *current evidence*, to infer when the impairment began.")(emphasis added). Maresh also exhibited deficits in adaptive functioning at a young age, when he had frequent fights with other children. Based on the substantial evidence, the ALJ should have found that Maresh's impairment manifested itself during his developmental period.

*Id.* at 900.

Like the claimant in *Maresh*, Plaintiff struggled in special education classes, eventually dropping out of school before graduation, and she was unable to pass tests to obtain a high school equivalency diploma. Referring to Plaintiff's educational history, Dr. Keraus wrote:

[Plaintiff] completed the tenth grade and started her junior year of high school before giving up on academics and dropping out. She had a tutor, then an educational aide, and then received formal special educational services. She could not comprehend, was distracted by noises, and found it hard to focus and concentrate. She generally received D grades. She was frequently assaulted by peers in school. [Plaintiff] has made several unsuccessful attempts to complete her GED.

Tr. at 589–90. In addition, testing showed that Plaintiff's reading ability and spelling abilities were at the 4th grade level, and her mathematics ability was at a 5th grade level. Tr. at 593. Dr. Keraus wrote that Plaintiff meets the criteria for an attention deficit disorder "which has been continuously present since childhood." *Id.* Dr. Keraus went on to write that Plaintiff's distorted personality development was a result of accumulated experience of neglect, abuses and trauma, beginning in early childhood. Tr. at 594. When Plaintiff was a patient at Broadlawns Medical Center in February 1992, it was noted that Plaintiff had completed the 10th grade in high school, and that she admitted to being suspended due to fighting. Tr. at 385. Dr. Keraus also wrote:

[Plaintiff] evidences distortions in her personality development as a result of accumulated experiences of early childhood parental neglect and abuses, a childhood and adolescence marked by further traumatic experiences and environments, and adult relationships, exposure to the drug culture, and suffering serious bodily injuries, disfigurements, chronic pain and sexual violations and assaults. She developed a pervasive pattern of instability in her identity and self-image, emotions, behavior, relationships, and view and expectations of the world. She meets the criteria for borderline personality disorder. She also has dependent personality traits which

leave her vulnerable to further inability to protect herself and her belongings. She has unresolved issues regarding loneliness and rejection, dichotomous thinking, and unstable sense of herself, impulsivity, affective instability, and inappropriate and overly intense emotional reactivity.

Tr. at 594.

Evidence of deficits in adaptive functioning before age 22, is also found in the diagnoses of Antisocial Personality Disorder. According to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM–IV–TR), "The essential feature of Antisocial Personality Disorder is a pervasive pattern of disregard for, and violation of, the rights of others that begins in childhood or early adolescence and continues into adulthood." DSM–IV–TR at 701.

For this diagnosis to be given, the individual must be at least age 18 years … and must have had a history of some symptoms of Conduct Disorder before age 15 years … Conduct Disorder involves a repetitive and persistent pattern of behavior in which the basic rights of others or major age-appropriate societal norms or rules are violated. The specific behaviors characteristic of Conduct Disorder fall into one of four categories; aggression to people and animals, destruction of property, deceitfulness or theft, or serious violation of rules.

DSM–IV–TR at 702. Antisocial personality disorder was diagnosed by Derek Grimmell, Ph.D. when he conducted a psychological evaluation on November 15, 2010. Tr. at 282–85. Dr. Grimmell wrote that antisocial personality disorder was the "primary" diagnosis. Tr. at 285. Dr. Keraus, on the other hand, wrote that Plaintiff's clinical profile did not reflect antisocial personality disorder, bipolar disorder, or psychosis (Tr. at 593) when he saw her in June 2012. The ALJ's finding that Plaintiff's severe impairments include antisocial personality disorder, however, does find support in Dr. Grimmell's report.

Substantial evidence supports the finding that the onset of Plaintiff's impairment, along with deficits in adaptive functioning, manifested itself before the age of 22.

In the opinion of the Court, substantial evidence on the record as a whole demonstrates that Plaintiff has an IQ, on one scale of the WAIS–IV, one point higher than that which would qualify for benefits under section 12.05(C) of the listings at step three of the sequential evaluation. See, Tr. at 595 whereon Dr. Keraus wrote: "[Plaintiff] is just a percentage point above technically qualifying for mild intellectual disability. She is a slower learner with a mental age equivalent of thirteen years." Tr. at 595. On two other scales, her IQ is 75 or below. Substantial evidence supports a finding that this impairment manifested itself during Plaintiff's developmental period, i.e. prior to the age of 22, with deficits in adaptive functioning. Plaintiff also suffers from other severe physical and mental impairments. Therefore, it was error for the ALJ not to have found that Plaintiff's impairment medically equals the criteria of that set forth in the listing.

The Court acknowledges that the parties argue about whether the ALJ committed error at the fourth and fifth steps of the sequential evaluation. At the conclusion of *Maresh*, the Court wrote:

Because Maresh meets Listing 12.05C, he is entitled to benefits. *See Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003) ("If the claimant wins at the third

step (a listed impairment), she must be held disabled, and the case is over."). *Id.* at 901. Here, Plaintiff medically equals the listing which qualifies her for the benefits for which she applied. Arguments about steps 4 and 5 are of no consequence because the sequential evaluation ended at step 3.

Although the ALJ did not find Plaintiff disabled, the last finding in his decision is: "The substance use disorder is not a contributing factor material to the determination of disability." That finding was not disputed on appeal. Nevertheless, because of Plaintiff's history of drug and alcohol abuse, as well as her limited intellectual capacity and history of being easily taken advantage of, the Court would strongly recommend that the Commissioner appoint a competent individual or institution to function as a representative payee so that benefits are spent in Plaintiff's best interest. This was also the recommendation of Debbie Slaymaker, LISW, CFAE, a social worker at Bridgeview Community Mental Health Center in Clinton, Iowa where Plaintiff was a client for several years. Tr. 443–44.

In *Gavin v. Heckler,* 811 F.2d 1195, 1201 (8th Cir.1987), the Court wrote: "[W]here the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated [her] disability by medical evidence on the record as a whole, we find no need for remand." In the case at bar, Plaintiff has demonstrated by medical evidence that her conditions medically equal the requirements of section 12.05(C) of the listings of impairments. A remand is necessary only to calculate the amount of Plaintiff's past due and ongoing monthly benefits.

## CONCLUSION AND DECISION

The Court has considered the evidence which supports, as well as the evidence which detracts from the decision made by the ALJ. After applying the balancing test noted in *Gavin v. Heckler,* 811 F.2d at 1199 (8th Cir.1987), and cases cited therein, this Court holds that the final decision of the Commissioner is not supported by substantial evidence on the record as a whole and is based on legal error. Substantial evidence on the record as a whole supports only one conclusion, namely that Plaintiff medically equals a listed impairment. This case is reversed and remanded for an award of benefits.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b)[2]. *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

---

**2.** N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."