# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2112

_____

Tenesha Vernee Reed

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Batesville

_____

Submitted: December 18, 2014
Filed: February 5, 2015
[Unpublished]

_____

Before WOLLMAN, BYE, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Tenesha Vernee Reed appeals the district court's order affirming the denial of disability insurance benefits and supplemental security income. The sole issue on appeal is whether the administrative law judge (ALJ) should have found Reed disabled under Listing 12.05C, which requires (1) a valid verbal, performance, or full scale IQ of 60-70; (2) significantly subaverage general intellectual functioning with

deficits in adaptive functioning initially manifested before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C; Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006) (discussing Listing 12.05C's requirements); see also McDade v. Astrue, 720 F.3d 994, 1001 (8th Cir. 2013) (claimant bears burden of demonstrating that impairment meets all specified criteria for listing). The ALJ determined that Reed's impairments did not meet or medically equal a listing, finding no evidence of mild mental retardation with an IQ score of 60-70, or of subaverage adaptive functioning with a physical or mental impairment imposing added and significant functional limitations; and finding that the only severe mental impairment was borderline intellectual functioning. See Hulsey v. Astrue, 622 F.3d 917, 920 n.3 (8th Cir. 2010) (individuals with borderline intellectual functioning have IQ scores of 71-84). We conclude that the ALJ's determination is not supported by substantial evidence. See Hill v. Colvin, 753 F.3d 798, 800 (8th Cir. 2014) (de novo review).

Consulting psychologist Kenneth Hobby administered a WAIS-III intelligence test to Reed in November 2007, resulting in a verbal IQ of 68, performance IQ of 67, and full-scale IQ of 65; and he diagnosed mild mental retardation. He commented on his 2007 written report that the test results were consistent with Reed's level of adaptive behavior, work history, and background information; there were no obvious mental or emotional factors that might have impacted her scores; Reed appeared honest, open, and positive; the scores seemed to give an accurate indication of her current functioning; and there were no indications of symptom exaggeration or malingering that might have compromised his examination findings. Dr. Hobby reevaluated Reed in December 2010 and issued another report containing comments about the 2007 intelligence test results, including that Reed's ability to recall numbers was in the "normal range" and inconsistent with her 2007 IQ scores, "suggest[ing] possible malingering on that test." In the 2010 report, Dr. Hobby indicated that Reed functioned within or near the mentally retarded range, but also wrote that she

"present[ed] as higher than her scores on the WAIS-III would indicate." He estimated that Reed's level of intellectual functioning was "at a borderline/upper mentally handicapped" level; and his diagnoses included "Borderline/upper mild intellectually handicapped Intellectual Functioning."

The ALJ relied in part on Dr. Hobby's 2010 comments, and also on the fact that Reed had worked from 2003-2009 in a medium unskilled job, in finding that her allegations of a disabling intellectual level were not entirely credible and thus that an IQ score "in the 70's"–in the range for borderline intellectual functioning–would be more representative of her actual functioning. However, it appears from Dr. Hobby's 2010 report that he questioned some, but not all, of the 2007 IQ scores, which all fell within the requisite range for Listing 12.05C; and the regulations state that the lowest verbal, performance, or full scale IQ score is used for purposes of the listing. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D.6.e. We find it unclear whether Dr. Hobby's comments on the 2010 report, and his failure in that report to give a straightforward determination of Reed's intellectual level, amounted to an opinion that the 2007 test results were invalid. Cf. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (ALJ's duty to develop record fully may include re-contacting treating physician for clarification of opinion when crucial issue is undeveloped). As to the ALJ's reliance on Reed's work history, Listing 12.05C assumes mildly mentally retarded individuals can work if their only impairment is mild mental retardation. See Lott v. Colvin, 772 F.3d 546, 551-52 & n.4 (8th Cir. 2014) (mildly mentally retarded individuals usually achieve vocational and social skills adequate for minimal self-support).

We disagree with the Commissioner's contentions on appeal that a comment in Dr. Hobby's 2007 report showed he suspected malingering then, that the ALJ found Reed's daily activities inconsistent with a disabling intellectual level, and that Reed's testimony concerning playing the piano and helping care for her sister's children was inconsistent with her 2007 IQ scores. Reed's complete testimony regarding her daily

activities, coupled with her reports to Dr. Hobby about her limited activities, is consistent with someone whose IQ scores are those reflected in the 2007 testing. See id. at 551 (ALJs could nearly always point to performance of rudimentary activities of daily living, thus making it practically impossible for noninstitutionalized mentally retarded claimants to show significantly sub-average general intellectual functioning with deficits in adaptive functioning); cf. Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir. 2000) (claimant's reliance on family members to assist him, and his daily activities of watching television and visiting friends did not call into question his IQ results, which met criteria of Listing 12.05C).

The Commissioner does not challenge, or even address, Reed's contentions concerning Listing 12.05C's two criteria in addition to valid IQ test results. We agree with Reed that there was evidence showing that her mental retardation initially manifested itself before age 22, as she had attended special education classes and repeated several grades, had problems with math and learning to read, and had quit school when told she had to repeat the eleventh grade. See Maresh, 438 F.3d at 900. She also met the criteria of additional and significant work-related limitations of function from a physical or other mental impairment, given the ALJ's determination that her anxiety disorder, history of surgery for a hand fracture, and morbid obesity were severe impairments. See Lott, 772 F.3d at 549-50.

We thus reverse and remand to the district court with directions to return the case to the Commissioner for further development of the record on the validity of the 2007 test results.

_____