# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1931

_____

Paul Scott

*Plaintiff - Appellant*

v.

Nancy A. Berryhill,[1] Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Batesville

_____

Submitted: January 12, 2017
Filed: April 28, 2017

_____

Before COLLOTON, GRUENDER, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

_____

[1]Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017 and has been automatically substituted as a party pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Paul Scott appeals the decision of the district court[2] affirming the administrative law judge's ("ALJ") denial of his application for supplemental security income under Title XVI of the Social Security Act. *See* 42 U.S.C. § 1381-1383f. Because the decision of the ALJ is supported by substantial evidence on the record as a whole, we affirm.

## I. Background

Scott applied for supplemental security income in January 2013, alleging disability due to a back condition, migraine headaches, hearing loss, and a left eye injury. He alleged a disability onset date of October 15, 2012. Scott did not complete the eighth grade, but he has held jobs as an animal caretaker farm worker (a semi-skilled occupation), construction worker, and power plant cleaner. Scott injured his back in a fall and eventually stopped working in 2012 due to back pain.

Scott's claim was denied initially, upon reconsideration, and after a hearing before an ALJ. The ALJ employed the five-step evaluation process prescribed by 20 C.F.R. § 416.920(a). At step one, the ALJ considers whether the claimant is performing "substantial gainful activity," and, if so, finds that the person is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that Scott had not engaged in substantial gainful activity since the application date. At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment that meets the duration requirement." *Id.* at § 416.920(a)(4)(ii). Here, the ALJ found that Scott suffered two severe impairments: borderline intellectual functioning and a back disorder. At step three, the ALJ considers whether

---

[2]The Honorable Beth Deere, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

the claimant's severe impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at § 416.920(a)(4)(iii). If so, then the ALJ must find the claimant disabled. 20 C.F.R. § 404.1520(d). At this step, the ALJ found that Scott's impairments do not meet or equal one of the listed impairments. The ALJ considered Listing 12.05, finding that Scott did not manifest deficits in adaptive functioning prior to age twenty-two. The ALJ noted Scott's history of attending special education classes but explained that the consultative examiners did not identify any other significant deficits. The ALJ also considered Listing 12.02, finding that Scott has only mild restrictions in daily living activities, mild difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. The ALJ noted that Scott is able to cook, help feed his sister's calves, do laundry, dust, drive short distances, and care for personal hygiene. Although Scott reads and writes poorly and cannot balance a checkbook, he communicates effectively, can perform simple math, requires no reminders to complete chores, and is able to focus enough to watch television three hours per day. Thus, the ALJ found Scott did not meet or equal a listed impairment.

At step four, the ALJ determines the claimant's residual functional capacity ("RFC") and considers whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). The ALJ found that Scott has the residual functional capacity to perform medium, unskilled work. However, the work is limited to jobs with few variables, little independent judgment, and interpersonal contact incidental to the work performed. Supervision should be simple, direct, concrete, and brief, and the work cannot involve making change. Tasks should be able to be "learned and performed by rote." The ALJ then found that Scott cannot perform past relevant work. At step five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can adjust to other work. *Id.* at § 416.920(a)(4)(v). The vocational expert testified that an individual with Scott's RFC could work as a cleanup worker or poultry hanger, jobs existing in substantial

numbers in the national economy. As a result, the ALJ found Scott not disabled and denied his application for supplemental security income. The Appeals Council denied review.

Scott challenged the ALJ's decision in the Eastern District of Arkansas pursuant to 42 U.S.C. § 405(g). The district court affirmed the ALJ's decision, and Scott now appeals. He challenges the ALJ's determination that he did not meet Listing 12.05C and contends that the ALJ failed to include his limitations in concentration, persistence, or pace in the RFC hypothetical.

## II. Discussion

We review the district court's determination *de novo*, affirming the ALJ's decision if it is "supported by substantial evidence on the record as a whole." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (quotation omitted). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (quoting *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (quotation marks omitted)). While we must consider evidence both supporting and detracting from the ALJ's decision, we will not reverse "simply because some evidence may support the opposite conclusion." *Id.* Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.*

## A. Listing 12.05C

First, substantial evidence supports the ALJ's determination that Scott does not meet or equal Listing 12.05C. Listing 12.05C requires: 1) "significantly subaverage

-4-

general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22," 2) "[a] valid verbal, performance, or full scale IQ of 60 through 70," and 3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (2013). The ALJ found and the parties do not dispute that Scott's IQ of 63 falls within the prescribed range and that Scott has a qualifying physical limitation. Thus, the only contested question is whether Scott has demonstrated limitations in adaptive functioning that initially manifested before age twenty-two.

Substantial evidence supports the ALJ's finding that Scott did not demonstrate adaptive function limitations. While Scott did not complete high school and has a history of attending special education classes, Scott's work history demonstrates that he was able to maintain unskilled and semi-skilled work for multiple years.[3] Indeed, he only ceased working due to his back condition, not mental issues. *See Goff*, 421 F.3d at 793 (finding relevant that the claimant left work because of reasons other than the claimed disability).[4] Although Scott reads poorly, cannot balance a checkbook, and cannot manage finances or complete forms without assistance, he generally lives independently, communicates well and thinks logically, has a driver's license, can drive and shop for groceries on a weekly basis, can perform simple math, and helps

---

[3]The dissent argues that Scott's work on a farm as an animal caretaker was unskilled. However, the vocational expert testified that this job is semi-skilled because it requires a worker to provide the animals with the correct amount of food and to keep records accordingly. Neither Scott's work history form nor the consultative physician's report support the conclusion that Scott's farmhand work was limited exclusively to manual labor as the dissent suggests.

[4]Scott does not challenge the ALJ's determination that he retains the residual functional capacity to carry on medium work despite his back condition. While Scott did claim his back condition as a disability, the back condition is not relevant to whether he suffers from adaptive function limitations.

feed his sister's calves. He can cook meals, do laundry, dust, follow instructions, and does not require reminders to complete tasks. Although Scott challenges the district court's analogy to *Ash v. Colvin*, 812 F.3d 686, 692 (8th Cir. 2016), *Ash* provides an apt comparison. Ash had a history of attending special education classes, could not pay bills or manage a checking account without assistance, and was diagnosed with mild mental retardation, but she could drive, shop, "complet[e] basic household chores and activities of daily living," and had a "ten-year work history."[5] *Id.* at 691. Thus, we found that substantial evidence supported the ALJ's determination that Ash did not demonstrate the adaptive function limitations necessary to meet Listing 12.05C. *Id.* In the same way, Scott's limitations, when considered together with Scott's abilities, do not compel the conclusion that Scott's condition meets or equals Listing 12.05C. *See also Cheatum v. Astrue*, 388 F. App'x 574, 576-77 (8th Cir. 2010) (finding that an individual diagnosed with borderline intellectual functioning who "had maintained employment in semi-skilled and unskilled positions for many years" and could "perform activities of daily living and light housework, drive a car, help prepare meals, and care for her father who was suffering from Alzheimer's" did not show deficits in adaptive functioning).

Contrary to Scott's argument, *Lott v. Colvin*, 772 F.3d 546 (8th Cir. 2014), is not applicable. In *Lott*, the ALJ failed to have an IQ test administered and failed to "make specific findings as to whether the record evidence supports an onset of intellectual and adaptive functioning disability before age twenty-two." *Id.* at 550. In this case, however, the ALJ did make specific findings regarding Scott's adaptive functioning, finding that he did not demonstrate adaptive functioning deficits that manifested prior to age twenty-two. Accordingly, we must affirm as long as substantial evidence supports those findings, even if substantial evidence also

---

[5]Notably, although Ash did work as a cashier, she required a special accommodation and could not calculate change herself. *Ash*, 812 F.3d at 691.

supports the opposite conclusion. *See Goff*, 421 F.3d at 789. As explained above, substantial evidence supports the ALJ's conclusion that Scott did not demonstrate the adaptive function limitations necessary to qualify under Listing 12.05C.

## B. RFC Hypothetical

Second, the ALJ adequately accounted for Scott's limitations in concentration, persistence, or pace in the RFC hypothetical. In order to constitute substantial evidence, a vocational expert's testimony must be based on a hypothetical that captures the "concrete consequences" of the claimant's deficiencies. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quotation omitted); *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). Indeed, "the hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports." *Lacroix*, 465 F.3d at 889. A hypothetical question that omits the effects of concentration, persistence, or pace deficiencies that the ALJ has found is not sufficient. *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996) (finding a limitation to simple work insufficient to describe the effects of deficiencies in the ability to maintain regular attendance, be punctual, maintain attention and concentration, and complete a normal work week). That being said, a sufficient hypothetical need not contain much more than the hypothetical at issue in *Newton*. *See Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (finding sufficient a hypothetical that included "scantly more than what was included in the *Newton* hypothetical").

The RFC hypothetical provided for medium, unskilled work involving "personal contact that is incidental to the work performed," requiring "little independent judgment . . . [and] simple, direct, and . . . very brief" supervision. The complexity of tasks was limited to "tasks [that] can be learned and performed by rote." This hypothetical adequately captured the concrete consequences of Scott's deficiencies. In describing his findings of Scott's difficulties with respect to

-7-

concentration, persistence, or pace, the ALJ noted Scott's reading, writing, and math difficulties, as well as his history of special education and failure to finish high school. Although the ALJ noted that Scott "described a reduced attention span," he "retains the focus necessary to watch three hours of television per day" and does not require reminders. Indeed, the ALJ noted that Scott demonstrated good concentration and persistence during consultative examinations, but that consultative examiners noted a slow pace. As a result, the ALJ concluded Scott could not perform complex tasks and accordingly crafted the RFC to limit the complexity of tasks and the duration and complexity of supervision (in addition to interpersonal and math-related limitations). Given the lack of severity the ALJ found in Scott's concentration, persistence, or pace deficiencies, limiting the complexity of tasks to those performed by rote and requiring that instructions be brief, simple, direct, and concrete sufficiently captured the concrete consequences of Scott's deficiencies, even if the hypothetical did not lay out the exact deficiencies with medical precision. *See Lacroix*, 465 F.3d at 889. Thus, the vocational expert's testimony constitutes substantial evidence supporting the ALJ's finding at step five.

### III. Conclusion

Accordingly, substantial evidence supports the ALJ's findings, and we affirm the order of the district court.


KELLY, Circuit Judge, dissenting.

I respectfully dissent from the court's opinion because I believe the ALJ's determination that Scott did not demonstrate adaptive functioning deficits manifesting before age 22 was not supported by substantial evidence. In reaching its conclusion, the ALJ relied on the fact that the consultative examiners diagnosed Scott with

"borderline intellectual functioning" instead of "mental retardation."[6] The DSM-IV's definition of mental retardation requires adaptive functioning deficits in at least two specified skill areas. Because the examiners believed Scott had deficits in just one of the specified areas—functional academic skills—they concluded Scott did not have mental retardation. However, a claimant need not meet the DSM-IV definition of mental retardation to meet Listing 12.05C. Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006). Rather, to meet Listing 12.05C, a claimant need simply demonstrate "deficits in adaptive functioning" that manifested before age 22. Id. (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C).

Here, Scott presented ample evidence of deficits in adaptive functioning that manifested before age 22. To begin with, Scott presented evidence that he has a full-scale IQ of 63. Although Scott was 46 at the time of the evaluation, "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001). Additionally, Scott presented evidence that he attended special education classes, repeated the sixth and seventh grades, quit school after the eighth grade, cannot manage his finances or make change, has worked only in unskilled menial-labor jobs, has difficulty reading and writing, and required assistance to complete his disability forms. These circumstances are similar to those in other cases where we concluded the claimant demonstrated deficits in adaptive functioning that manifested prior to age 22. See, e.g., Christner v. Astrue, 498 F.3d 790, 791, 793 (8th Cir. 2007) (concluding that "contrary to the ALJ's determination, there is some circumstantial evidence to support the fact that [the claimant]'s deficiency manifested before age twenty-two" where he had a full-scale IQ of 58, attended special education classes, and quit school after the sixth grade); Maresh, 438 F.3d at 900 (concluding that "the

_____

[6]For clarity, I use the term "mental retardation," used in DSM-IV, rather than the updated term "intellectual disability," used in DSM-5.

ALJ should have found that [the claimant]'s impairment manifested" before age 22 where the claimant had a verbal IQ of 70 at age 37, attended special education classes, quit school after the ninth grade, and, as a child, often fought with other children).

A history of working in semi-skilled or skilled positions requiring average intellectual functioning, such as cashier or certified nursing assistant, can be evidence that a claimant does not have deficits in adaptive functioning. See Ash, 812 F.3d at 691–93; Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). But here, there is no evidence Scott has ever performed semi-skilled or skilled work. The vocational expert testified that Scott's work as a farmhand would be semi-skilled if it involved duties like recording inventory, but that it would be unskilled if it involved "only the labor part" of the job. Nothing in the record suggests that Scott's farmhand duties included any tasks similar to recording inventory; on the contrary, Scott indicated in his work history report that he did not "[d]o any writing, complete reports or perform duties like this" as a farmhand, and he reported to the consultative examiners that he performed only "manual labor" as a farmhand. Furthermore, neither Scott's history of simple, unskilled labor, nor his ability to perform "rudimentary activities of daily living"—such as driving short distances, preparing simple meals, washing laundry, dusting, and watching television—is inconsistent with having deficits in adaptive functioning. See Lott, 772 F.3d at 551. As we have previously explained, Listing 12.05C applies to individuals whose subaverage intellectual functioning would not itself preclude employment in the absence of an additional physical or mental impairment. Id. For example, in Lott, we concluded that the claimant was not necessarily unable to meet Listing 12.05C solely because he had worked as a construction worker and short-order cook and could carry out basic daily activities. Id. at 548, 551–52; see also Reed v. Colvin, 779 F.3d 725, 726 (8th Cir. 2015) (per curiam) (explaining that the claimant's daily activities and six-year history of unskilled work did not undermine her allegations of an intellectual disability meeting

-10-

Listing 12.05C); <u>Bailey v. Apfel</u>, 230 F.3d 1063, 1065 (8th Cir. 2000) (determining that the claimant's daily activities of watching television and visiting friends "d[id] not call into question the validity of [his] IQ results," which met Listing 12.05C). For the reasons above, I would hold that the ALJ's decision to deny benefits under Listing 12.05C was not supported by substantial evidence.

_____