KELLY, Circuit Judge,
dissenting.
I respectfully dissent from the court’s opinion because I believe the ALJ’s determination that Scott did not demonstrate adaptive functioning deficits manifesting before age 22 was not supported by substantial evidence. In reaching its conclusion, the ALJ relied on the fact that the consultative examiners diagnosed Scott with “borderline intellectual functioning” instead of “mental retardation.”[6] The DSM-IV’s definition of mental retardation requires adaptive functioning deficits in at least two specified skill areas. Because the examiners believed Scott had deficits in just one of the specified areas — functional academic skills — they concluded Scott did not have mental retardation. However, a claimant need not meet the DSM-IV definition of mental retardation to meet Listing 12.05C. Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006). Rather, to meet Listing 12.05C, a claimant need simply demonstrate “deficits in adaptive functioning” that manifested before age 22. Id. (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C).
Here, Scott presented ample evidence of deficits in adaptive functioning that manifested before age 22. To begin with, Scott presented evidence that he has a full-scale IQ of 63. Although Scott was 46 at the time of the evaluation, “a person’s IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant’s intellectual functioning.” Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001). Additionally, Scott presented evi *859 dence that he attended special education classes, repeated the sixth and seventh grades, quit school after the eighth grade, cannot manage his finances or make change, has worked only in unskilled menial-labor jobs, has difficulty reading and writing, and required assistance to complete his disability forms. These circumstances are similar to those in other cases where we concluded the claimant demonstrated deficits in adaptive functioning that manifested prior to age 22. See, e.g., Christner v. Astrue, 498 F.3d 790, 791, 793 (8th Cir. 2007) (concluding that “contrary to the ALJ’s determination, there is some circumstantial evidence to support the fact that [the claimantj’s deficiency manifested before age twenty-two” where he had a full-scale IQ of 58, attended special education classes, and quit school after the sixth grade); Maresh, 438 F.3d at 900 (concluding that “the ALJ should have found that [the claimantj’s impairment manifested” before age 22 where the claimant had a verbal IQ of 70 at age 37, attended special education classes, quit school after the ninth grade, and, as a child, often fought with other children).
A history of working in semi-skilled or skilled positions requiring average intellectual functioning, such as cashier or certified nursing assistant, can be evidence that a claimant does not have deficits in adaptive functioning. See Ash, 812 F.3d at 691-93; Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). But here, there is no evidence Scott has ever performed semiskilled-or skilled work. The vocational expert testified that Scott’s work as a farmhand would be semi-skilled if it involved duties like recording inventory, but that it would be unskilled if it involved “only the labor part” of the job. Nothing in the record suggests that Scott’s farmhand duties included any tasks similar to recording inventory; on the contrary, Scott indicated in his work history report that he did not “[d]o any writing, complete reports or perform duties like this” as a farmhand, and he reported to the consultative examiners that he performed only “manual labor” as a farmhand. Furthermore, neither Scott’s history of simple, unskilled labor, nor his ability to perform “rudimentary activities of daily living” — such as driving short distances, preparing simple meals, washing laundry, dusting, and watching television — is inconsistent with having deficits in adaptive functioning. See Lott, 772 F.3d at 551. As we have previously explained, Listing 12.05C applies to individuals whose subaverage intellectual functioning would not itself preclude employment in the absence of an additional physical or mental impairment. Id. For example, in Lott, we concluded that the claimant was not necessarily unable to meet Listing 12.05C solely because he had worked as a construction worker and short-order cook and could carry out basic daily activities. Id. at 548, 551-52; see also Reed v. Colvin, 779 F.3d 725, 726 (8th Cir. 2015) (per curiam) (explaining that the claimant’s daily activities and six-year history of unskilled work did not undermine her allegations of an intellectual disability meeting Listing 12.05C); Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir. 2000) (determining that the claimant’s daily activities of watching television and visiting friends “d[idj not call into question the validity of [his] IQ results,” which met Listing 12.05C). For the reasons above, I would hold that the ALJ’s decision to deny benefits under Listing 12.05C was not supported by substantial evidence.

. For clarity, I use the term "mental retardation,” used in DSM-IV, rather than the'updated term “intellectual disability,” used in DSM-5.